UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

                                    :

UNITED STATES OF AMERICA     :    <u>INFORMATION</u>

          - v.-            :    07 Cr. _____

                                      :

DANIEL BONAMASSA,

          Defendant.

- - - - - - - - - - - - - - - - - - X

**07 CRIM. 475**

COUNT ONE

(<u>Conspiracy to Commit Theft or Bribery Concerning Programs<br>Receiving Federal Funds</u>)

       The United States Attorney charges:

<u>Co-Op City</u>

      1.   Co-Op City is a New York State Mitchell-Lama housing cooperative located in the Bronx, New York.  As a Mitchell-Lama development, Co-Op City was established for the purpose of providing affordable housing for middle-income residents.  To effectuate that purpose, Mitchell-Lama developments such as Co-Op City charge rents (or "maintenance") that are considerably lower than the rents that qualified residents would have to pay for comparable housing on the open market.

      2.   Co-Op City is home to at least approximately 50,000 residents.  It consists of 15,372 residential units in 35 high-rise buildings and 7 townhouse clusters.

      3.   Co-Op City is legally known as "Riverbay

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAY 2 9 2007

Judge Buchwald

Corporation." Since in or about 1999, Co-Op City has been run by two primary entities: the Riverbay Board of Directors (the "Board") and an outside management company (the "Management Company"). The Board is comprised of 15 residents of Co-Op City who stand for election on a rotating basis every few years.

4.    New York State imposes certain regulations on how Co-Op City may spend money on capital improvements at Co-Op City. For example, New York State regulations require that for any job in excess of $50,000, Co-Op City must put the work out for bid, memorialize the agreement with the bid winner in a formal contract, and subject the contract to approval by the New York State Division of Housing and Community Renewal ("DHCR"), which regulates Co-Op City.

<u>Federal Funding of Co-Op City</u>

5.    The New York City Housing Authority ("NYCHA") is a New York City agency responsible for, among other things, supervising a Section 8 rental assistance program (the "Section 8 Program"). The Section 8 Program is regulated and fully funded by the United States Department of Housing and Urban Development ("HUD"). As part of the Section 8 Program, HUD pays subsidies, typically in the form of vouchers, for people to live in private housing.

6.    During the calendar year 2000, approximately $976,000 worth of federal funding from HUD was awarded to Co-Op

2

City.  During the calendar year 2001, approximately $834,000
worth of federal funding from HUD was awarded to Co-Op City.
During the calendar year 2002, approximately $738,000 worth of
federal funding from HUD was awarded to Co-Op City.

7.    Neither HUD nor NYCHA place any restriction on how
Co-Op City can spend the federal subsidies.  Accordingly, during
all times relevant to this Information, Co-Op City was permitted
to use the federal funds for capital improvements such as
renovations to and painting of apartment units at Co-Op City.

<u>The Defendant</u>

8.    At all times relevant to this Information, DANIEL
BONAMASSA, the defendant, was the president and owner of Stadium
Interior Painting, Inc. ("Stadium Painting"), which was based in
New York, New York.  Between 2000 and 2002, BONAMASSA and Stadium
Painting sought to do business as a vendor with Co-Op City.

<u>Means and Methods of the Conspiracy</u>

9.    In or about Spring 2000, the Management Company
decided to retain an outside contractor to perform the painting
work at Co-Op City.  On or about June 27, 2000, Co-Op City issued
an invitation to private painting contractors to bid for the
painting work at Co-Op City.

10.    DANIEL BONAMASSA, the defendant, and other co-
conspirators not named as defendants herein, subsequently agreed
that BONAMASSA would submit on behalf of Stadium Painting a bid

3

for the painting work at Co-Op City.  In exchange for help
steering the painting work to Stadium Painting, BONAMASSA agreed
to pay kickbacks to these other co-conspirators.  Based on this
corrupt arrangement, Stadium Painting was awarded the Co-Op City
painting work in or about September 2000.

    11.  During the course of the conspiracy, from at least
in or about August 2000, until at least in or about July 2002,
Co-Op City paid Stadium Painting approximately $3.5 million
dollars for painting work that Stadium Painting performed at Co-
Op City.  DANIEL BONAMASSA, the defendant, paid approximately
$100,000 in kickbacks to other co-conspirators not named as
defendants herein to carry out the conspiracy.

Statutory Allegation

    12.  From at least in or about August 2000, up to and
including at least in or about July 2002, in the Southern
District of New York and elsewhere, DANIEL BONAMASSA, the
defendant, and others known and unknown, unlawfully, willfully,
and knowingly did combine, conspire, confederate, and agree
together and with each other to commit offenses against the
United States, to wit, to violate Section 666(a)(2) of Title 18,
United States Code.

    13.  It was a part and an object of the conspiracy that
DANIEL BONAMASSA, the defendant, and others known and unknown,
unlawfully, willfully and knowingly would and did corruptly give,

4

offer, and agree to give a thing of value, to wit, cash kickback payments, to a person, with intent to influence and reward an agent of an organization that received in a one year period benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, Co-Op City, in connection with a business, transaction, and series of transactions involving a thing of value of $5,000 and more, to wit, the Co-Op City painting work and cash kickback payments, in violation of Title 18, United States Code, Section 666(a)(2).

OVERT ACTS

14.   In furtherance of the charged conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   In or about Summer 2000,  DANIEL BONAMASSA, the defendant, and other co-conspirators not named as defendants herein, met to discuss Stadium's bid for the painting work at Co-Op City.

b.   In or about July 2000, BONAMASSA submitted a bid on behalf of Stadium Painting for the painting work at Co-Op City.

c.   On or about April 17, 2002, BONAMASSA

5

deposited a check for approximately $251,619.59 for painting work completed at Co-Op City.

d.    On or about April 17, 2002, BONAMASSA withdrew approximately $6,450 in cash that he dispersed as kickbacks for the Co-Op City painting work.

(Title 18, United States Code, Section 371.)


COUNT TWO

(Theft or Bribery Concerning Programs Receiving Federal Funds)

The United States Attorney further charges:

15.    Paragraphs One through Eleven and Fourteen of this Indictment are realleged, repeated, and incorporated by reference as if fully set forth herein.

16.    From at least in or about August 2000, up to and including at least in or about July 2002, in the Southern District of New York and elsewhere, DANIEL BONAMASSA, the defendant, unlawfully, willfully and knowingly would and did corruptly give, offer, and agree to give a thing of value, to wit, cash kickback payments, to a person, with intent to influence and reward an agent of an organization that received in a one year period benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, Co-Op City, in connection with a business, transaction, and series of

6

transactions involving a thing of value of $5,000 and more, to wit, the Co-Op City painting work and cash kickback payments.

(Title 18, United States Code, Section 666(a)(2).)


FORFEITURE ALLEGATIONS

17.  As the result of committing one or more of the offenses alleged in Counts One and Two of this Information, in violation of 18 U.S.C. §§ 371 and 666, defendant DANIEL BONAMASSA, shall forfeit $53,000, which constitutes or is derived from proceeds traceable to the commission of the offenses, and/or represents or is traceable to the gross receipts obtained, directly or indirectly, as a result of the commission of the offenses, to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982, and 28 U.S.C. § 2461.

Substitute Assets Provision

18.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(i)  cannot be located upon the exercise of due diligence;

(ii)  has been transferred or sold to, or deposited with, a third party;

(iii)  has been placed beyond the jurisdiction of the court;

(iv)  has been substantially diminished in value;

7

or

      (v)  has been commingled with other property which

cannot be divided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C.

§ 982 and 21 U.S.C. § 853(p), to seek forfeiture of any other

property of said defendant up to the value of the forfeitable

property described above.

      (Title 18, United States Code, Sections 666, 981, 982;
         Title 21, United States Code, Section 853(p);
         Title 28, United States Code, Section 2461.)

MICHAEL J. GARCIA
United States Attorney

8